865 F.2d 269
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Pacific BELL, Appellant,
v.
The UNITED STATES, Appellee.
AT & T Communications, Inc. Intervenor.
 Nos. 88-1480, 88-1482.
 United States Court of Appeals, Federal Circuit.
 Dec. 19, 1988.
 
 Before NIES, Circuit Judge, COWEN, Senior Circuit Judge, and ARCHER, Circuit Judge.
 ARCHER, Circuit Judge.
 
 DECISION
 
 1
 Pacific Bell (Pac Bell) appeals from the decisions of the General Services Administration Board of Contract Appeals (GSBCA or Board), 88-2 BCA p 20,805 and 88-3 BCA p 20,900, sustaining the protest of AT & T Communications, Inc. (AT & T) to the General Services Administration (GSA) contract award to Pac Bell at San Francisco, GSBCA No. 9252-P, and denying the protest of Pac Bell to a similar GSA contract award to AT & T at Los Angeles, GSBCA No. 9488-P(9280-P). We affirm both decisions.
 
 Background
 
 2
 GSA sought to procure electronic tandem network (ETN) services at several locations on the Federal Telecommunications System (FTS) and solicited proposals to replace and upgrade the incumbent systems. Responding to these solicitations were AT & T and various Regional Bell Operating Companies (RBOCs), including Pac Bell. AT & T submitted offers at eleven locations, while each RBOC competed at only those locations within its geographical region.
 
 
 3
 The solicitation indicated that an award would be made for each location and that any volume discount would be evaluated on a "case-by-case" basis. AT & T's proposals presented to GSA both non-discounted and discounted prices, the discounted prices being contingent upon AT & T being awarded sufficient contracts around the country to aggregate at least 13,001 "switch-hook terminations". Such discounted prices have been termed "volume discount offers" by the parties.
 
 
 4
 After evaluating the best and final offers of the various contractors in accordance with its interpretation of the terms and conditions of the solicitation, GSA awarded contracts to the low offeror at each location. AT & T was initially awarded only five locations, including Los Angeles. It protested the awards, which it did not receive, at several locations including San Francisco, Philadelphia, Atlanta and New Orleans. For reasons not pertinent to this appeal, the GSBCA granted AT & T's protest at Philadelphia, Atlanta, and New Orleans and directed that the agency award these contracts to AT & T as the low or sole responsive vendor. The Board's decision on these matters was not appealed and has become final. Thus, AT & T has now been awarded eight of the eleven contracts for which it competed.
 
 
 5
 At the time of the original award of each contract, AT & T was deemed the low vendor, based on its non-discount price, at locations representing 9,368 terminations. Adding the 3,565 terminations at San Francisco, the total number of terminations needed to trigger AT & T's volume discount was still not reached. Accordingly, AT & T's volume discount offer was not considered at San Francisco and the contract was awarded to Pac Bell as low vendor.
 
 
 6
 AT & T argued to the Board that GSA misapplied its volume discount offers. The alleged error was that GSA should have used the discount price in the first instance to determine whether AT & T would be low vendor at enough locations to reach the 13,001 terminations necessary for the discount price to apply. Pac Bell countered that the manner in which GSA applied the discount was within its discretion and that AT & T should have known long before the contract was let how GSA intended to apply its discount to the multiple locations, making AT & T's post-award protest untimely.
 
 
 7
 The Board agreed with AT & T's contention regarding the proper application of its volume discount, as well as timeliness, and Pac Bell appeals.
 
 
 8
 Pac Bell also appeals the Board's decision denying its protest of the award to AT & T at Los Angeles. In Los Angeles, GSA again disregarded AT & T's volume discount offer, but awarded the contract to AT & T as low vendor on the basis of its non-discount offer. Pac Bell asserts that GSA improperly applied other provisions of the solicitation in evaluating AT & T's proposal. The use of AT & T's volume discount price at Los Angeles would, as conceded by Pac Bell, more than offset the issues Pac Bell has raised and prevent it from being low vendor at Los Angeles even if all of Pac Bell's contentions were decided in its favor. Because we determine that AT & T's volume discount prices are applicable, as the Board found, we need not consider the issues raised regarding Los Angeles.
 
 OPINION
 
 9
 A. Timeliness.
 
 
 10
 Pac Bell's argument that AT & T's protest was not timely is in direct conflict with the finding of the Board that "AT & T had no reason to know prior to the award that GSA would in fact evaluate its discount prices in this fashion". In asserting its position, Pac Bell has merely highlighted testimony that, when taken alone, tends to support its desired conclusion. It has ignored, however, considerable evidence in the record that supports the Board's conclusion. Viewing the evidence in its entirety, we are not persuaded that Board's findings are unsupported by substantial evidence and should be set aside. See 41 U.S.C. Sec. 609(b) (1982); Universal Camera Corp. v. NLRB, 340 U.S. 474, 481 (1951) ("substantial evidence" review requires "that courts consider whole record," not merely that of "one side"); Erickson Air Crane Co. v. United States, 731 F.2d 810, 814 (Fed.Cir.1984) ("[E]ven though the record may contain evidence which supports a contrary position, we will not alter a board's finding if substantial evidence supports it.").
 
 
 11
 B. Volume Discount Offers.
 
 
 12
 The Board's decision on the volume discount issue is regarded by Pac Bell as inconsistent with GSA's discretion to disregard offers that violated the location by location or "case-by-case" terms of the solicitation. Additionally Pac Bell argues that the Board's holding that AT & T's discount prices should have been considered in determining the locations where AT & T was low offeror "effectively altered the ground rules for the procurement without allowing all offerors the opportunity to compete under these new rules" and thus violates the full and open competition requirement of 41 U.S.C. Sec. 253 et seq. (1982 & Supp. II 1984).
 
 
 13
 We are not persuaded by Pac Bell's arguments. The record fully supports the Board's determination that "AT & T's volume discount plan is not conditioned upon GSA not awarding any location to any other offeror. In other words, it does not prevent an award to a lower-priced offeror at any location." Even though several locations would have to be combined to reach the required 13,001 terminations necessary for the volume discount to apply, AT & T's offer did not foreclose an award to another contractor at any location. The volume discount offers were therefore responsive to the solicitation. Indeed, it is apparent from the record that even GSA considered AT & T's discount offers responsive. That it did is confirmed by its intent to take advantage of the volume discount had AT & T been awarded enough terminations on the basis of its non-discount prices to cause the discount to be available. Thus, Pac Bell's argument that the Board usurped the agency's discretion to disregard non-complying offers is unfounded.
 
 
 14
 With regard to the full and open competition argument of Pac Bell, the Board's opinion does not indicate any modification of the terms of the solicitation. In requiring GSA to consider AT & T's discount offers in determining the low vendor at each location, the Board merely interpreted and applied the terms of its offers vis-a-vis other offers; it did not reinterpret or misapply the solicitation. As indicated above, it was GSA that concluded that the AT & T offers were in compliance with the requirements of the solicitation, including the accpetance and evaluation of discount proposals on a "case-by-case" basis. We are therefore unable to conclude that the "ground rules" of the solicitation were altered by the Board's decision and find no merit in Pac Bell's argument that the Board's decision altered the ground rules for the procurement and that all offerors must be given another opportunity to compete.
 
 
 15
 Additionally, we agree with the Board's statement that GSA's method of applying the discount plan was internally inconsistent and illogical. As noted, GSA would consider only the non-discount prices in awarding those locations yielding the initial 13,000 terminations, yet once that threshold was exceeded, it would presumably take advantage of the lower prices at all locations. AT & T contemplated that the discount either would or would not apply to all locations it was awarded, depending solely on whether a sufficient number of terminations was involved. The unfairness and illogic of requiring AT & T to compete for awards on the basis of its non-discounted price yet to provide the contract services on the basis of its discounted price is obvious.
 
 
 16
 Accordingly, based on the record as a whole, we cannot say that the Board in its interpretation of the solicitation and AT & T's volume discount offers erred as a matter of law or made findings that were not supported by substantial evidence. Fortec Constructors v. United States, 760 F.2d 1288, 1291 (Fed.Cir.1985); Erickson Air Crane Co. v. United States, 731 F.2d at 814; 41 U.S.C. Sec. 609(b).
 
 
 17
 Because of the Board's decision regarding the Philadelphia, Atlanta and New Orleans awards, we are unpersuaded that Pacific Bell can show that it was in fact harmed or prejudiced by the Board's decision on the volume discount issue. These locations and the four original uncontested locations awarded AT & T aggregated 11,922 terminations. Either San Francisco's 3,565 terminations or Los Angeles' 3,164 terminations would have caused the AT & T volume discount to apply according to GSA's standard for awarding the contracts. Pac Bell cannot, therefore, claim harm from the Board's decision on the volume discount issue. In the absence of the now-corrected errors in the solicitation and award processes in Philadelphia, Atlanta and New Orleans, Pac Bell would not have been awardee in San Francisco.
 
 
 18
 C. Award Direction.
 
 
 19
 The question of whether the GSBCA had the authority to direct GSA to award the San Francisco contract to AT & T after finding it to be the low offeror has been affected by GSA's action in awarding that contract to AT & T during the pendency of this appeal. GSA's own cost estimates show that AT & T's volume discount offer at San Francisco was the lowest received. Since the GSBCA's order directing award was appealed by the United States, we are not convinced that GSA acted under compulsion of that order in awarding the contract to AT & T. Rather, it appears to have acted independently based on its reevaluation of the proposals in the light of the Board's decision, as the government asserts in its brief. Accordingly, we will treat this issue as moot.